# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1835

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Jarvis Williams, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 11, 2007
Filed: April 7, 2008

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Jarvis T. Williams was convicted of being a felon in possession of a weapon, and an unlawful user of marijuana in possession of a weapon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). He appeals the denial of his motion to suppress. Having jurisdiction under 18 U.S.C. § 1291, this court affirms.

I.

On March 15, 2005, three police officers were dispatched to the Super 8 motel to investigate a call of individuals smoking marijuana. The officers spoke with a guest who said he smelled marijuana in the hallway. They determined the smell was from

Room 221. One officer knocked on the door. The occupant, Alex Davis, opened the door, entered the hallway, and admitted smoking marijuana. Davis allowed the officers to search his room, where they found marijuana cigarettes, $7,400 in counterfeit bills, a MAK-90 assault rifle, and a bag of marijuana. Davis told the officers that the gun was not his, and that he had also rented Room 222 across the hall. Two officers went to speak with the motel manager; one remained in the hallway with Davis. The officer in the hallway testified that Davis repeatedly said: "I wish you would go in there [Room 222] and get those guys." When the other two officers returned, Davis was arrested and taken to the police station.

The motel manager told the officers that Davis had rented both Room 221 and Room 222. When Davis checked in, he registered only his name for the rooms, but did mention that he had a friend coming. The manager asked the officers to check Room 222, because he did not know if anyone was there. The officers went to the room, knocked, but there was no answer. The manager gave the officers the key. They began to open the door, but it was immediately slammed shut. One officer announced that he was a police officer. The occupant, defendant Williams, said he was not dressed, opened the door with the chain on, and asked for a minute to dress. The officer replied that he would kick the door open if Williams did not open it. Williams slammed the door shut, and put the dead bolt on. The officer began kicking at the door, and heard what he thought was the slide of a handgun, followed by the rustling of blinds. The officer kicked the door in, and found Williams on the window ledge. The officers found a handgun under the mattress, without a bullet in the chamber.

Williams moved to suppress the handgun. After an evidentiary hearing, the magistrate issued a report and recommendation denying the motion. The magistrate concluded that Williams did not have a legitimate expectation of privacy in the hotel room because he was a "mere visitor." The magistrate also stated that even if he had a legitimate expectation of privacy, Davis consented to the search, and there were

exigent circumstances justifying the search. The district court adopted the report and recommendation. A jury convicted Williams of both counts. He was sentenced to 293 months imprisonment.

## II.

In reviewing a denial of a motion to suppress, this court reviews factual findings for clear error, and legal conclusions de novo. *See **United States v. Solomon**,* 432 F.3d 824, 827 (8th Cir. 2005). According to Williams, he had a legitimate expectation of privacy in the hotel room, Davis did not consent to the search of Room 222, and there were no exigent circumstances.

## A.

The Fourth Amendment protects individuals against unreasonable searches and seizures by the government. *See **Minnesota v. Carter**,* 525 U.S. 83, 88 (1998). Ability "to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." ***Rakas v. Illinois**,* 439 U.S. 128, 143 (1978). In order to have a legitimate expectation of privacy, the defendant must show (1) a subjective expectation of privacy, and (2) the expectation is objectively reasonable. *See **Carter**,* 525 U.S. at 88.

Under the second requirement, individuals have a reasonable expectation of privacy in their hotel room. *See **United States v. Roby**,* 122 F.3d 1120, 1125 (8th Cir. 1997). "Mere visitors" to someone else's hotel room do not have a reasonable expectation of privacy. *See **United States v. Sturgis**,* 238 F.3d 956, 958-59 (8th Cir. 2001) (individual who told agents he was merely visiting a friend's hotel room, and evidence suggested the purpose of the visit was purely commercial distribution of drugs, did not have a legitimate expectation of privacy in the room); ***United States v.***

*Carter,* 854 F.2d 1102, 1105-06 (8th Cir. 1988) (individual had no legitimate expectation of privacy in hotel room when he never appeared there, did not check in, did not pay for the room, and had none of his personal belongings in the room).

Relying on *Sturgis* and *Carter*, the district court determined that Williams did not have a legitimate expectation of privacy in Room 222 because "there is insufficient evidence to establish that Defendant Williams was anything more than a mere visitor to Room 222." The court found the fact that Williams was not registered for the room "compelling evidence that he was a mere visitor." Whether an individual has a reasonable expectation of privacy is a question of law reviewed de novo. *See* ***United States v. Kiser,*** 948 F.2d 418, 423 (8th Cir. 1991).

The fact that Williams did not register or pay for the hotel room does not necessarily preclude him from having a reasonable expectation of privacy in the room. *See* ***United States v. Jeffers,*** 342 U.S. 48, 50-52 (1951) (individual who was allowed to use hotel room, had a key, and often entered room for various purposes could object to search of room on Fourth Amendment grounds even though someone else paid and registered for the room). Unlike *Sturgis*, where the defendant admitted he was merely a visitor, and *Carter,* where the defendant had never even been to the hotel room, here the few facts in the record indicate Williams was a legitimate guest at the motel. The manager testified that Davis rented two rooms, and that he understood that "there was going to be other guests there" because Davis told him "my friend is going to come in." Also, Williams was the only person in Room 222, which makes it less likely he was a "mere visitor" to the room. However, the record does not indicate the length of time Williams was in the room, whether he had a key or personal belongings in the room, or whether there were others who were intended to occupy the room. As the expectation of privacy issue is unnecessary to the ultimate holding, this court will assume that Williams had an expectation of privacy in Room 222.

B.

Consensual searches do not violate the Fourth Amendment "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* 500 U.S. 248, 250-51 (1991). In order for a consensual search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent) authority to do so. *See Illinois v. Rodriguez,* 497 U.S. 177, 181, 185-86 (1990).

Williams argues that Davis did not actually consent to the search. "The precise question is not whether [Davis] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." *See United States v. Jones,* 254 F.3d 692, 695 (8th Cir. 2001). Davis's consent is a question of fact reviewed for clear error. *Id.*

Although the officers never asked Davis for consent, one of the officers testified that while in the hallway, Davis repeatedly stated: "I wish you would go in there [Room 222] and get those guys." He also testified that "it appeared that he was trying to make a better deal for himself by giving someone else up that was involved in illegal activity." There is no requirement that consent be given in response to an officer's request. *See Florida v. Royer,* 460 U.S. 491, 497 (1983) (to justify a search based on consent, the government must prove that there was consent, and that it was voluntary). In fact, consent given without a request indicates voluntariness. *See United States v. Lakoskey,* 462 F.3d 965, 973 (8th Cir. 2006) (consent is voluntary if given by free choice, rather than duress or coercion). The district court's finding that Davis consented is not clearly erroneous.

Williams contends that the officer who heard Davis consent never relayed that information to the officers who searched the room. The officer testified that he could not remember anything specific, but it would be typical "that I relay that to him [the

-5-

other officer]." "[T]he validity of a search 'may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if . . . some degree of communication exists between them.'" *United States v. Gillette,* 245 F.3d 1032, 1034 (8th Cir. 2001), *quoting* *United States v. Gonzales,* 220 F.3d 922, 925 (8th Cir. 2000). The officers here were all at the hotel to investigate a call, and worked together as a team. Therefore, the knowledge of the officer who heard Davis consent can be imputed to the other officers. *See* *Gillette,* 245 F.3d at 1034 (requisite degree of communication existed to impute knowledge where officer was called to assist in an ongoing investigation).

Consent may be gained from a third party who possesses common authority over the premises to be searched. *See* *United States v. Matlock,* 415 U.S. 164, 171 (1974). The registered occupant of a hotel room has common authority over that room sufficient to justify a search based on his consent. *See* *United States v. Burns,* 298 F.3d 523, 542 (6th Cir. 2002) (sole registered occupant who rented the room had right to use or possess the room and therefore the ability to consent to a search regardless of another guest's presence), *citing* *Matlock,* 415 U.S. at 171 n.7 (common authority "rests on mutual use of the property by persons generally having joint access or control for most purposes . . ."). However, the consent of a third party cannot justify a search when the defendant who shares common authority is present and objects. *See* *Georgia v. Randolph,* 547 U.S. 103, 121 (2006) ("[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search. . . .").

Davis, as the registered guest, had the capacity to consent to a search of Room 222. That consent, however, was no longer valid once Williams slammed the door and put the dead bolt on. *See* *id.*; *United States v. Sanders,* 424 F.3d 768, 775 (8th Cir. 2005) (individual unequivocally withdrew consent where "[a]ny objective observer watching this scenario would conclude he was not consenting to the search").

C.

Even a non-consensual, warrantless search can be justified by exigent circumstances. *See **United States v. Esparza**,* 162 F.3d 978, 980 (8th Cir. 1998). Exigent circumstances are present where lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed. *See **United States v. Ball**,* 90 F.3d 260, 263 (8th Cir. 1996). On review, this court must look objectively at what a reasonable police officer would believe. *See **United States v. Uscanga-Ramirez**,* 475 F.3d 1024, 1028 (8th Cir. 2007). "[T]he situations of urgency protected by this [exigency] exception cannot be created by police officers." ***United States v. Duchi**,* 906 F.2d 1278, 1284 (8th Cir. 1990).

Williams contends that the facts do not support the district court's finding that the officer heard a firearm being chambered. The district court's finding is reviewed for clear error. *See **United States v. Amburn**,* 412 F.3d 909, 915 (8th Cir. 2005). There was no round in the chamber of the gun found in Room 222. However, one officer testified: "The slide rack is a pretty unmistakable sound. I know [the other officer] and I both kind of looked at us expecting that somebody was going to start firing rounds in the door . . . . We assumed later that he [Williams] might have been trying to get the round out of it." The district court obviously found the officer's testimony credible. This court is highly deferential to district court credibility determinations. *See **United States v. Andrews**,* 454 F.3d 919, 921 (8th Cir. 2006). The court's finding that the officer heard a round being chambered is not clear error.

Williams relies on *Johnson v. United States,* 333 U.S. 10 (1948), and *United States v. Richard*, 994 F.2d 244 (5th Cir 1993), to show that the police manufactured the exigency here. First, *Richard* is not binding on this court. Second, *Johnson* and *Richard* do not control the outcome of this case. Unlike *Johnson* and *Richard,* here the officers initially had consent to search the room, therefore, there was no need for them to obtain a warrant before knocking on the door. *See **Johnson**,* 333 U.S. at 15

("No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate."); *Richard*, 994 F.2d at 249 (officers had time to obtain a warrant before knocking on the door of a motel room of a suspected drug smuggler). The exigent circumstances in this case were also more serious than those claimed in *Johnson* and *Richard*. The officers here had just found an assault rifle in Room 221 and heard the slide of a handgun after the door to Room 222 was bolted. There was no suggestion of a danger to officer safety in either *Johnson* or *Richards*. *See Johnson*, 333 U.S. at 12 (officers heard shuffling noise in the room when occupant did not immediately open the door); *Richard*, 994 F.2d at 247 (when occupants did not open the door immediately, officers heard people talking softly, doors or drawers slamming, and footsteps). Also, unlike in *Johnson* or *Richards*, the rattling of the blinds in this case indicates flight. *See Johnson*, 333 U.S. at 15 ("No suspect was fleeing or likely to take flight."); *Richard*, 994 F.2d at 249 ("Agents were also posted behind the room, and the occupants did not attempt to flee when the officers announced their presence.").

One officer testified that after the dead bolt was put on, and before he heard the slide of a gun, he "started kicking on the door a little bit to try to get them to open the door." As Davis's consent was no longer valid at this point, and the exigent circumstances had not yet occurred, the officer did not have the right to "kick on the door a little bit." However, the record shows that the slide of the gun and Williams fleeing were not a reaction to the kick, but a reaction to the lawful actions of the police

before Williams put the dead bolt on.  The exigent circumstances here were not manufactured, and justified the officers' entry into Room 222.

III.

The judgment of the district court is affirmed.

_____