**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

v.

MARLON MOORE,
          *Defendant-Appellant*.

No. 13-10464

D.C. No.
2:12-cr-01335-
DGC-1

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
October 8, 2014—Phoenix, Arizona

Filed October 23, 2014

Before: Dorothy W. Nelson, Barry G. Silverman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Silverman

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's denial of a motion to suppress evidence obtained through a search of the defendant's residence.

The defendant argued that the search was unlawful under *Georgia v. Randolph*, 547 U.S. 103 (2006), because, even though his fiancée consented to the search of their joint residence, the defendant was present and did not consent. Noting that *Randolph* requires that the resident who is refusing consent both be present at the house and expressly refuse to allow the search, the panel held that the district court correctly determined that the search of the defendant's residence did not violate the Fourth Amendment, where the defendant refused to come to the door and acquiesced in letting his fiancée deal with the police.

### COUNSEL

Jon M. Sands, Federal Public Defender, and Daniel L. Kaplan (argued), Assistant Federal Public Defender, Phoenix, Arizona, for Defendant-Appellant.

John S. Leonardo, United States Attorney, Mark S. Kokanovich, Deputy Appellate Chief, and Theresa Cole

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Rassas (argued), Assistant United States Attorney, Phoenix, Arizona, for Plaintiff-Appellee.

**OPINION**

SILVERMAN, Circuit Judge:

Defendant Marlon Moore appeals from his conviction and sentence for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841. Moore contends that the district court erred in denying his motion to suppress evidence that law enforcement officials obtained through a search of his residence. Moore argues that the search of his residence was unlawful under *Georgia v. Randolph*, 547 U.S. 103 (2006), because, even though his fiancée consented to the search of their joint residence, he was present at the residence and did not consent.

We hold today that the district court correctly determined that the search of Moore's residence did not violate the Fourth Amendment. *Randolph* requires that the resident who is refusing consent both be present at the house and *expressly* refuse to allow the search. *See* 547 U.S. at 122–23. Here, Moore never expressly refused to consent. To the contrary, he refused to come to the door and acquiesced in letting his fiancée, who also lived there, deal with the police. Accordingly, we affirm the conviction and sentence.[1]

---

[1] In a separate memorandum contemporaneous with this opinion, we addressed and rejected Moore's remaining challenges to his conviction and sentence.

## BACKGROUND

In January of 2012, Moore was living in a house in Laveen, Arizona, with his fiancée Kristen Jones, their nine-month old daughter, and three more of Jones' children (ages nine, four, and three). Moore worked in construction, ran a taxi business, and was the primary caretaker of the children.

The Department of Homeland Security had been tracking Moore since the fall of 2011 as a suspect in a marijuana distribution ring. On January 18, 2012, DHS started conducting surveillance on Moore's residence based on a tip from a confidential informant that a large quantity of marijuana had been delivered there. At 6:00 a.m. the next day, DHS Special Agent Scott Wagoner continued the surveillance. He was joined an hour later by nine other federal law enforcement officials and two local law enforcement officials. At approximately 8:04 a.m., the officers watched as Jones left the house and drove off in a Ford Crown Victoria. At approximately noon, Moore exited the house, opened the garage door, pulled a Honda Accord into the garage, and closed the garage door.

A couple of hours later, around 2:00 p.m., some of the officers knocked on the door of the house and rang the doorbell. They heard people inside, children crying, and "shuffling around," but no one came to the door. After a few minutes, the officers returned to their cars. At this point, Wagoner decided to go back to his office to start working on an affidavit in support of an application for a search warrant. During that time, however, his supervisor suggested that Wagoner try calling the phone number that was listed on a taxi cab that had been parked in front of the home all day.

Wagoner dialed that number at 7:07 p.m., and Jones answered. Agent Wagoner identified himself, explained that the house was under surveillance for possible drug trafficking, and that he was "in the middle of writing a search warrant." Jones said that her three children, her sister, and possibly "her boyfriend Marlon [Moore]" were at the house. Wagoner later testified that Jones "seemed deeply concerned for her kids being in the house and the fact that the search warrant was going to happen." Jones told Wagoner that she would leave work and asked him to meet her at the house.

Soon thereafter, at 7:44 p.m., Jones called her sister, who was in the house. One minute later, the officers watching the house saw a person run through the backyard, from the house to the edge of the yard, and heard a loud sound consistent with something or someone coming over the fence and landing on the ground in the adjacent backyard. The officers were concerned that someone had fled the house and thus increased the law enforcement presence, including bringing in a helicopter. At the location where the officers heard the sound, they found two large boxes, each of which contained a 20-pound bundle of marijuana wrapped in green cellophane and surrounded by pink foam.

Wagoner returned to the scene and called Jones at 8:26 p.m. Jones told him she was on her way there. She arrived around 8:40 p.m. After a short conversation regarding the situation, Jones signed a Consent to Search form at 8:45 p.m.

Jones and some officers then went to the front door of the residence. When she arrived at the front door, Jones called her sister and Moore, but neither answered their respective phone. Jones then attempted to unlock the door with her keys, but she could not do so because the door had been

locked with a dead-bolt that could not be unlocked from the outside.  Jones continued to knock on the door and then called out – in a voice that "was very, very loud" and "definitely could be heard from inside" – "Marlon, Nikki, the police are out here, open the door, open the door."[2]  When still no one answered the door, the officers requested permission from Jones to break through the front door with a battering ram. Jones consented to the use of the ram.

The officers used the ram to open the door.  Jones then called out again, and Moore, Jones' sister, the children, and another man came out of the house.  Once they were inside the house, the officers found three boxes of marijuana that were identical to the two that had been found in the backyard of the neighboring house, along with digital scales, packing material, and shrinkwrap.  Following *Miranda* warnings, Moore admitted that the marijuana was his and gave details as to his sources and his shipping methods.

The government indicted Moore, charging him with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).  Moore pled not guilty, and proceeded towards trial.

Prior to trial, Moore moved to suppress the evidence seized from the home on the grounds that the officers' search of his house violated the Fourth Amendment.  After holding an evidentiary hearing where Wagoner was the sole witness, the district court denied the suppression motion.

A jury found Moore guilty of count one of the indictment, which charged him with possession of marijuana with intent

---

[2] "Nikki" is Jones' sister.

to distribute. The district court subsequently sentenced Moore to 46 months of incarceration, followed by three years of supervised release.

## DISCUSSION

### I. Jurisdiction and Standard of Review

On September 3, 2013, Moore timely appealed the district court's judgment filed that same day. *See* Fed. R. App. P. 4(b). We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review *de novo* the district court's denial of a motion to suppress evidence, but review the district court's underlying factual findings for clear error. *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009).

### II. Search of Moore's Residence

On appeal, Moore argues that the search of his residence was unlawful under the Fourth Amendment and the Supreme Court's decision in *Georgia v. Randolph* because, although his fiancée consented to the search, he was present at the residence and did not consent.

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Randolph*, 547 U.S. at 106. In *Georgia v. Randolph*, the Supreme Court created a narrow exception to this rule and held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as

to him, regardless of the consent of a fellow occupant." *Id.* at 122–23; *accord Fernandez v. California*, __ U.S. __, 134 S. Ct. 1126, 1129 (2014) ("In *Georgia v. Randolph*, we recognized a narrow exception to this rule, holding that the consent of one occupant is insufficient when another occupant is present and objects to the search." (citation omitted)).

Like the district court, we conclude that the search of Moore's residence was lawful under the Fourth Amendment. The search did not violate *Randolph* because Moore never expressly refused consent to the search. *Randolph* requires that the co-occupant both be physically present and *expressly* refuse consent. *See* 547 U.S. at 120 ("We therefore hold that a warrantless search of a shared dwelling for evidence over the *express* refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." (emphasis added)); *id.* at 122–23 ("This case invites a straightforward application of the rule that a physically present inhabitant's *express* refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." (emphasis added)). No such express refusal occurred here. The relevant conduct by Moore on that day is as follows:  he did not respond to the police officers' "knock and talk" at 2:00 p.m.; he did not answer Jones' phone calls; and he did not open the door for Jones when she, accompanied by police officers, knocked on the door at approximately 8:45 p.m. Moore never expressly refused to consent to the search and simply acquiesced in letting his fiancée deal with the police.

The facts at best show that Moore implicitly refused to allow the police to search the residence. However, *Randolph* requires an express, not implicit, refusal. *See* 547 U.S. at

120, 122–23. Moreover, the Supreme Court has subsequently emphasized that *Randolph* represents a "narrow exception" to the rule that "police officers may search jointly occupied premises if one of the occupants consents." *Fernandez*, 134 S. Ct. at 1129 (footnote omitted); *see also Randolph*, 547 U.S. at 121 ("we are drawing a fine line"). Therefore, we decline to extend the Supreme Court's holding in *Randolph* to include implicit refusals in addition to express refusals.

Further, Moore's reliance on *United States v. Williams*, 521 F.3d 902 (8th Cir. 2008), is unpersuasive. In *Williams*, the defendant, after speaking to the police officers, slammed the door shut on the officers and put the dead-bolt on. *Id.* at 905. The Eighth Circuit found that this action was sufficient to invalidate a co-occupant's consent to search the premises. *See id.* at 907. Unlike in *Williams*, here, Moore never met the police officers at the door, nor did he engage in any affirmative conduct to physically prevent the police officers from coming inside the house. Moore simply remained in the house while Jones worked with the police officers to gain entry to the house. Acquiescence in a co-occupant's consent and police officers' subsequent actions is insufficient to satisfy the narrow exception set forth in *Randolph*.

Relying on *Randolph*, Moore also argues that commonly held understandings regarding a fellow occupant's right to invite third parties to enter a shared residence do not extend to the use of a battering ram. We disagree. There is nothing in *Randolph* that prevents police officers from using a battering ram to gain access to a residence when the co-occupant is locked out and expressly consents to the use of such methods.

The search of Moore's residence was lawful and did not violate the Fourth Amendment.  Therefore, the district court correctly denied Moore's motion to suppress.

**AFFIRMED.**