**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 17 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERTO JUAREZ, | No. 19-15965 |
| Plaintiff-Appellant, | D.C. No. 4:17-cv-00591-DTF |
| v. | |
| GALLAGHER, named as S.P. Gallagher # 1389; MARK NAPIER, named as Pima County Sheriff, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
D. Thomas Ferraro, Magistrate Judge, Presiding

Submitted May 12, 2020**
San Francisco, California

Before: THOMAS, Chief Judge, and FRIEDLAND and BENNETT, Circuit
Judges.

Roberto Juarez appeals the district court's grant of summary judgment in

favor of Defendants, Pima County Sheriff's Office Deputy S. P. Gallagher and Pima

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

County Sheriff Mark Napier. Juarez brought a claim under 42 U.S.C. § 1983 for a violation of his Fourth Amendment rights when Gallagher entered Juarez's apartment to keep the peace as Juarez's ex-girlfriend, Virgen Quinones, collected her personal property. The district court granted summary judgment to Defendants because it determined that there was no genuine issue of material fact and that Gallagher had not violated Juarez's constitutional rights, thus resolving both the substantive claims against Gallagher and the "ratification" municipal liability claim against Sheriff Napier. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo a grant of summary judgment on qualified immunity grounds. *Bonivert v. City of Clarkston*, 883 F.3d 865, 871–72 (9th Cir. 2008). We agree with the district court that Gallagher is entitled to qualified immunity because, taking the facts in the light most favorable to Juarez, Gallagher did not violate Juarez's constitutional rights.

In 2014, Juarez signed an apartment lease, and one month later added Quinones as a "new occupant" through an occupant change form. In 2015, both signed a one-year lease renewal. On February 29, 2016, Juarez made two 911 calls to the Pima County Sheriff's Department about a domestic dispute with Quinones. Quinones then left the apartment that night. The next day she called the Sheriff's Department and asked for a deputy's help in retrieving her belongings from the apartment. Gallagher responded to the "keep the peace" call and met Quinones at

the apartment. Gallagher knocked on the apartment door, but no one answered. Quinones later showed Gallagher her driver's license showing the apartment as her address and told him that she had lived there for about two years. Quinones tried using her key to get into the apartment but could not open the door because of an internal lock. Eventually Juarez opened the door (he claims that a Sheriff's Department Sergeant told him on the telephone that he had to). Quinones gestured for Gallagher to enter first, then entered behind him. Juarez did not object to their entry. Once inside, Juarez (responding to Gallagher's questions) told Gallagher that Quinones lived in the apartment "less than two years." Eventually Quinones finished gathering her property and left with Gallagher. Gallagher was in the apartment for about ten to fifteen minutes. The following day Juarez signed an occupant change form stating Quinones would be a departing occupant effective that day.

Juarez claims that Gallagher violated his Fourth Amendment rights by entering the apartment without a warrant.[1] However, Gallagher entered with the clear voluntary consent of Quinones—"an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant." *Georgia v. Randolph*, 547 U.S. 103, 106 (2009). Quinones asked Gallagher to enter the

---

[1] Juarez also argued before the district court that he had been unconstitutionally "seized." He does not substantively raise the seizure claim in this appeal, and thus has waived it. *See, e.g., Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) (stating that issues referred to in a statement of the case but not specifically discussed in briefs are deemed waived).

apartment. Quinones (accurately) told Gallagher that she had lived in the apartment for two years. Quinones showed Gallagher her identification that listed the apartment's address. Gallagher saw that Quinones had a key that fit the lock on the apartment door and could not open the door only because the internal lock was engaged. These facts, even when viewed in the light most favorable to Juarez, demonstrate that Quinones at a minimum had apparent authority to consent to Gallagher's entry. Apparent authority exists where (1) the officer believed an untrue fact which made him believe the consent-giver had control over the area; (2) under the circumstances, it was objectively reasonable to believe that fact was true; and (3) that fact would have given the consent-giver actual authority. *United States v. Ruiz*, 428 F.3d 877, 880–81 (9th Cir. 2005). Thus, even if Quinones did not have actual authority to consent to Gallagher's entrance, it was reasonable for Gallagher to believe that she did.

Gallagher's reasonable belief that he had permission to enter the apartment was not dispelled after Juarez opened the door. *See United States v. Moore*, 770 F.3d 809, 813 (9th Cir. 2014) (requiring a co-occupant's refusal to entry be express not implied to defeat permission to entry given by a different co-occupant's voluntary consent). Juarez admits that he did not verbally object to Gallagher's entry, Juarez did not take any steps to block Gallagher's entry after Juarez opened the door; and Juarez never told Gallagher that Quinones lacked authority to consent—even after

4

Gallagher told Juarez he entered at Quinones's request.

As Gallagher's conduct did not violate Juarez's constitutional rights, Juarez's ratification claim against Sheriff Napier necessarily fails. *See Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (defining ratification as an adoption or approval of acts that caused a constitutional violation).[2]

**AFFIRMED**

---

[2] Plaintiff argues that qualified immunity must be abolished. As Plaintiff admits, however, we do not have the authority to abolish qualified immunity. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it."). Nevertheless, even were it abolished, Plaintiff would still lose, as his constitutional rights were not violated.