# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3614

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony L. Whitehead

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 15, 2021
Filed: April 26, 2021
[Published]

_____

Before GRUENDER, BENTON, and STRAS, Circuit Judges.

_____

PER CURIAM.

Anthony Whitehead, who was convicted of illegally possessing drugs and a firearm, challenges the sufficiency of the evidence and the district court's[1] denial of a motion to suppress the gun. We affirm.

_____

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

## I.

No stranger to crime, Whitehead was wanted on several arrest warrants, including one for the attempted kidnapping of Brittney Lark. While searching for them, a Deputy United States Marshal found a room registered in her name at a Kansas City hotel. At his direction, officers showed up and knocked on the door. Lark, nude at the time, answered. Whitehead, who was also naked, was lying on the far side of the bed. The officers ordered him to walk toward them and lie down outside the threshold of the door, where they handcuffed him and placed him under arrest. While retrieving Whitehead's pants for him, an officer discovered a baggie of cocaine in one of the pockets.

Meanwhile, the remaining officers conducted a "protective sweep" of the hotel room to determine if anyone else was present. Among other places, they checked under the mattress, where they spotted a pistol. Rather than seizing it right then, the officers called agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives to determine how best to proceed. Upon their arrival, the agents asked for Lark's consent to search, and once she gave it, they had her sign a consent-to-search form. Only then did the agents enter the room to retrieve the gun.

## II.

Before trial, Whitehead moved to suppress the gun. The district court, relying on a report and recommendation from a magistrate judge,[2] denied the motion based on the protective-sweep and consent exceptions to the Fourth Amendment's warrant requirement.[3]

---

[2]The Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

[3]Over the course of the appeal, Whitehead has waived several issues, including the suppression of the cocaine found in his pocket, the sufficiency of the

Even assuming that Whitehead had "a legitimate expectation of privacy" in the hotel room, despite not having been a registered guest, *United States v. Williams*, 521 F.3d 902, 905–06 (8th Cir. 2008), we agree with the district court that the protective-sweep exception justified the initial search, *see Maryland v. Buie*, 494 U.S. 325, 327, 334 (1990) (explaining when officers can conduct "a quick and limited search of premises[] incident to an arrest"); *see also United States v. Alatorre*, 863 F.3d 810, 813 (8th Cir. 2017) ("review[ing] the district court's conclusion that a protective sweep was justified de novo" (quotation marks omitted)). When Lark opened the door, the room was dark, the officers saw movement, and they could not tell how many people were there. Combined with Whitehead's extensive criminal history, these "articulable facts" gave them a "reasonable belief[]" that there might be others in the room who "pos[ed] a danger to them." *Alatorre*, 863 F.3d at 814–15 (emphasis omitted) (holding that similar facts justified a protective sweep).

The search was also "quick and limited," spanning about two minutes and covering only "those places in which a person might be hiding." *Buie*, 494 U.S. at 327; *see Alatorre*, 863 F.3d at 815–16 (upholding a two-minute protective sweep). It makes no difference that the officers were in the process of arresting Whitehead when the search was conducted. *See Alatorre*, 863 F.3d at 812–14 (upholding a protective sweep of a residence that officers conducted after the arrestee was handcuffed on the porch). Nor did it exceed the "scope" of a lawful protective sweep to check under the mattress, given that one of the officers testified that, in his experience, fugitives sometimes hide there. *United States v. Garcia-Lopez*, 809 F.3d 834, 838–39 (5th Cir. 2016) (holding that a search under a mattress during a protective sweep was not "overbroad").

---

evidence on the cocaine-possession count, and a jury-instruction issue. *See, e.g.*, *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

We also agree with the district court that consent justified the later reentry into the room to retrieve the gun. *See United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004) (explaining that a "warrantless search is valid if conducted [based on] knowing and voluntary consent" (quotation marks omitted)). Lark, who was the "registered occupant" of the room, consented during a fairly cordial conversation with the ATF agents, who did not threaten her or make any express promises. *Williams*, 521 F.3d at 907; *see United States v. Mancias*, 350 F.3d 800, 804–06 (8th Cir. 2003). They even explained to her that the decision was "[her] call" and that she could do "whatever [she] want[ed]." *See United States v. Sanchez*, 156 F.3d 875, 878–79 (8th Cir. 1998) (explaining that consent was voluntary when, among other things, officers told the defendant "that he need not permit" a search). Even if, as Whitehead points out, she was under arrest at the time, we cannot say that the district court clearly erred in finding that her consent was voluntary. *See Mancias*, 350 F.3d at 805–06 (reaching the same conclusion under similar circumstances).

III.

Even without suppression of the gun, Whitehead argues that there was insufficient evidence to convict him of possessing it. Reviewing this issue de novo and construing the evidence in the light most favorable to the government, we conclude that the government presented sufficient evidence of constructive possession. *See United States v. White*, 962 F.3d 1052, 1055–56 (8th Cir. 2020).

Constructive possession exists when a person "has dominion and control over the firearm itself or over the premises in which the firearm [is] located." *United States v. Ellis*, 817 F.3d 570, 576 (8th Cir. 2016) (internal quotation marks omitted). When the officers first arrived at the hotel room, Whitehead was lying on the bed directly above where the gun was eventually found. Add the presence of Whitehead's DNA on the grip, and the jury had more than enough to find constructive possession. *See United States v. Butler*, 594 F.3d 955, 964–65 (8th Cir. 2010).

To be sure, there was other evidence that could have led the jury to reach the contrary conclusion. For example, tests uncovered the DNA of at least two other unknown individuals on the gun, and Lark was also present in the hotel room. But even if there is another "interpretation of the evidence" consistent with Whitehead's innocence, it does not mean that the evidence was insufficient to convict him. *United States v. White Bull*, 646 F.3d 1082, 1089 (8th Cir. 2011). Rather, it was the jury's responsibility to weigh the competing possibilities and choose among them. *See United States v. St. John*, 716 F.3d 491, 493 (8th Cir. 2013) (per curiam).

IV.

We accordingly affirm the judgment of the district court.

_____