# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1816

_____

United States of America

*Plaintiff - Appellee*

v.

Nicholas Dwayne Jones

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: March 15, 2023
Filed: July 24, 2023

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury found Nicholas Dwayne Jones guilty of conspiracy to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and unlawful possession of a firearm as a felon. On appeal, Jones argues the district

court[1] erred by denying various pretrial motions as well as his motion for judgment of acquittal. He also argues the government violated his rights under the Fifth Amendment's due process clause and the Sixth Amendment's confrontation clause. We affirm.

## I. Background

The Mid-Iowa Narcotics Enforcement ("MINE") Task Force conducted four controlled buys of narcotics from Jamie Ellis with the help of a paid confidential informant ("CI"), the first of which occurred on March 10, 2020. The MINE Task Force equipped the CI with a recording device and surveilled the interactions between the CI and Ellis. Although Ellis was the initial target of the investigation, events that transpired during the controlled buys led the MINE Task Force to suspect Jones and his wife Nashia Jones were involved in illegal drug activity, and they became the primary targets of the investigation.

### A. Search Warrant Affidavit and Search

Based on information gathered from the controlled buys and associated investigation, Adam Jacobs, a Deputy Sheriff with the Dallas County Sheriff's Office assigned to the MINE Task Force as a detective, sought a search warrant for Jones, Nashia, their residence, and two vehicles. Detective Jacobs's affidavit in support of the search warrant stated he had "received information from a [CI] who stated that a female named Nashia Jones and a male named Nicholas Jones were involved in the sale and distribution of cocaine in the Des Moines Metro Area." Detective Jacobs's affidavit then went on to describe in detail the controlled buys on March 18, March 31, and April 29, 2020.

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Detective Jacobs stated that during a controlled buy that took place on March 18, the CI arrived at the buy location and made contact with Ellis;[2] Ellis then made contact with someone else; later, detectives observed Jones and Nashia arrive in a red Dodge Challenger; Nashia briefly went inside the buy location; after Nashia returned to the vehicle, Jones and Nashia left the buy location; the CI stated that she obtained the agreed-upon amount of cocaine from Ellis only after Ellis had met with Nashia; and the MINE Task Force surveilled Jones and Nashia returning to their residence. Detective Jacobs detailed a similar series of events during the next controlled buy, but this time Nashia arrived alone in a "silver Chevrolet Avalanche." As for the controlled buy on April 29, Detective Jacobs again relayed similar events to March 18 with a slight exception: surveillance showed Jones and Nashia were at the buy location a short time before the CI arrived.

In conjunction with these observations, the affidavit included specific details about the controlled buys. For example, in relation to the March 18 buy, Detective Jacobs stated: "The confidential informant stated after arriving at the predetermined buy location he/she met with [Ellis]. The confidential informant then made contact with [Jones] and Nashia. A short time later the confidential informant stated [Ellis] stated, 'She is here.'"

Detective Jacobs also stated that, based on his training and experience, he knew "drug users and dealers of controlled substances keep tools associated with their illegal activity at their residence, in outbuildings on the same property lot, on their persons, and in the vehicles they own or operate." The affidavit also included an attachment detailing reasons the CI was considered reliable, including that the informant had supplied reliable information in the past that had helped supply the basis for a search warrant and that led to the making of an arrest.

---

[2]Detective Jacobs did not include Ellis's name in the search warrant affidavit, referring to him only as an "unwitting informant." Detective Jacobs also did not provide the specific dates of the controlled buys, instead using approximate date ranges. For simplicity, we refer to Ellis by name and the specific dates of the controlled buys as supported by the trial record.

After obtaining the search warrant, Detective Jacobs and a team searched Jones's residence on May 4, 2020. A team member testified that after the police knocked on the front door and announced their presence and the search warrant, he saw a male—who he identified at trial as Jones—and a female in a window above the front door. The team member testified that the room where he saw the pair was the "master bedroom." During the search, officers seized approximately $154,000 in cash, handwritten notes believed to detail the amounts and prices of narcotics purchases, scales, several firearms, and ammunition, as well as marijuana and a marijuana grinder. One member of the search team also testified specifically about the two firearms he found in the bedroom.

## B. Pretrial Motions and Trial Evidence

A grand jury indicted Jones on three criminal charges: (1) conspiracy to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 846; (2) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i); and (3) possession of a firearm as a prohibited person, 18 U.S.C. §§ 922(g)(1) and (g)(3), and 924(a)(2). While the case proceeded toward trial, Jones filed several unsuccessful motions to prevent the government from introducing certain evidence. Relevant to this appeal are Jones's motion to suppress evidence, motions in limine, and renewed motion to suppress.

Jones filed a motion to suppress the evidence seized during the May 4 search, arguing the search warrant failed to establish probable cause and was based on false information. However, based on its review of the evidence supporting the affidavit, the district court found that probable cause supported the search of Jones's residence. Jones later filed a renewed motion to suppress and a request for a *Franks*[3] hearing.

---

[3]*See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (holding, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding

In this motion, Jones took issue with specific statements Detective Jacobs made in the affidavit. Again, the district court denied the motion. During the suppression hearing, however, the district court identified four specific inaccuracies with which it was "concerned and frustrated." These included:

1. Detective Jacobs's statement that he had received information from a CI that Jones and Nashia were involved in the sale and distribution of cocaine. The government conceded this statement was inaccurate.
2. The allegation that Ellis said "She is here," in reference to Nashia's arrival at the controlled-buy location. The audio recordings showed this was inaccurate.
3. The affidavit described Nashia's Chevrolet Avalanche as silver. The vehicle was actually tan.
4. The affidavit stated the CI made contact with Jones and Nashia. The government conceded this statement was inaccurate because the CI only had contact with Ellis, not Jones or Nashia.

Despite the inaccuracies, the district court did not grant Jones's motion because it concluded that, even if the statements were excluded, there was still probable cause to support the search. The district court relied on the affidavit's recitation of how Jones and Nashia would arrive at the controlled-buy location while the CI was waiting for drugs, and the CI would complete the purchase immediately afterwards. Thus, the district court determined a full *Franks* hearing was not warranted.

Beyond the motion to suppress, Jones filed several motions in limine. The first was to prevent the government from introducing Jones's prior felony records. In particular, Jones took issue with admitting a 2011 Iowa conviction for possessing a controlled substance with intent to deliver. The second and third motions in limine

of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request").

were aimed at preventing the government from using statements by the CI or Ellis in the audio and video recordings. All these motions were denied.

At trial, the jury heard evidence about events associated with the controlled buys, including clips of the recordings between the CI and Ellis, and MINE Task Force detective testimony about surveillance. For example, Detective Jacobs testified that Jones became a person of interest during the first controlled buy on March 10. Detective Jacobs testified that when the CI arrived at Ellis's house to purchase the drugs, Ellis did not have the drugs. Ellis made a phone call and, shortly thereafter, a red Dodge Challenger arrived. MINE Task Force detective Alicia Nuvolini testified she saw a woman get out of the passenger side of the Challenger, go inside the house for a short time, and then return to the car. The CI completed the buy after the Challenger's arrival. At that time, MINE Task Force investigators did not know the identities of the individuals in the Challenger. But they later identified Jones as the vehicle's owner and Nashia as the passenger who entered the house.

MINE Task Force detectives testified that during the three subsequent controlled buys, investigators surveilled both Ellis's residence and Jones's residence. Viewing the evidence in the light most favorable to the jury's verdict, MINE Task Force surveillance showed Ellis was only selling drugs to the CI after either Jones and Nashia together or just Nashia stopped at the controlled-buy location. Other relevant evidence presented to the jury is discussed within the analysis below.

## II. Analysis

We address the issues raised by Jones in the following order: (A) the denial of his motions to suppress and for a *Franks* hearing; (B) the denial of his motion in limine to prevent admission of Jones's 2011 state conviction; (C) the denial of his motion for judgment of acquittal; and (D) Jones's constitutional arguments.

## A. Motions to Suppress and *Franks* Motion

On appeal, Jones argues the district court erred by denying his motions to suppress and his motion for a *Franks* hearing. He reiterates his argument that the district court should have granted his motions because the warrant was not supported by probable cause. "Reviewing the denial of a motion to suppress, this court reviews 'legal conclusions de novo and factual findings for clear error.'" *United States v. Morris*, 915 F.3d 552, 555 (8th Cir. 2019) (quoting *United States v. Woods*, 747 F.3d 552, 555 (8th Cir. 2014)). "Reversal of a decision to deny a motion to suppress is warranted only if the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks omitted). "We review the district court's refusal to grant a *Franks* hearing for abuse of discretion." *United States v. Patterson*, 68 F.4th 402, 414 (8th Cir. 2023).

The Fourth Amendment states, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause to issue a search warrant exists if, in light of the totality of the circumstances, there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 686 (8th Cir. 2019) (quoting *United States v. Shockley*, 816 F.3d 1058, 1061 (8th Cir. 2016)). As we have said, "[t]here must be evidence of a nexus between the contraband and the place to be searched" to support a search warrant application. *Johnson*, 848 F.3d at 878 (alteration in original) (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)). "Factors to consider in determining if a nexus exists include 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" *Id.* (quoting same).

If a defendant asserts a search warrant was invalid because of false statements in the supporting affidavit, he may be entitled to a *Franks* hearing. *See Patterson*,

68 F.4th at 414. But first, he must "satisf[y] two criteria: (1) 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant' in the supporting affidavit, and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155–56).

The issue in this case comes down to whether the statements the district court identified as inaccurate were necessary to the finding of probable cause. We understand the heart of Jones's argument to be that when the false statements in the affidavit are disregarded, there was no longer a nexus between Jones's residence and the alleged contraband. Although we share the district court's concern and frustration regarding the "inaccuracies," we agree with its conclusion that the statements were not necessary to the finding of probable cause and a nexus between Jones's residence and the contraband.

With the exception of the tan/silver vehicle mix-up, the inaccurate statements generally relate to whether the CI had personal contact with Jones or Nashia, and whether Ellis confirmed to the CI the pair's arrival. Without these statements the affidavit still contained information about the timing of the CI's arrival at the controlled-buy location, Jones and Nashia's arrival (and once just Nashia) at the same location, and the CI's purchase of drugs after Jones or Nashia arrived. Jones and Nashia were also surveilled returning to their residence after visiting the controlled-buy location. These allegations, along with the statements of the affiant that it is common for drug dealers to keep drugs or other evidence of drug transactions at their residence, is sufficient to support a common sense inference there was a "fair probability" law enforcement would find "contraband or evidence of a crime" at Jones's residence. *Z.J.*, 931 F.3d at 686; *cf. United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (concluding evidence of illegal drug activity "was linked to" the defendant's "residence through the experienced opinion of [an agent] that drug manufacturers often keep contraband and proceeds at their personal residences"). Thus, the district court did not abuse its discretion by denying Jones's motion for a *Franks* hearing.

-8-

Beyond the issue of the inaccurate statements, Jones argues the search warrant was still not supported by probable cause. Jones claims the facts establishing probable cause were based on unreliable informants and hearsay. This argument is without merit. First, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998). The affiant included an attachment that detailed why the CI was reliable, and Jones presents nothing beyond the conclusory allegation that the CI was not reliable. Nor is there a rule excluding hearsay from the probable cause analysis. *See Illinois v. Gates*, 462 U.S. 213, 243–45 (1983). Thus, we find this argument unpersuasive.

For these reasons, we see no reason to conclude the district court's denial of the motion to suppress was unsupported by substantial evidence or was based on any other reversible error. *See Johnson*, 848 F.3d at 876.

## B. Motion in Limine

On appeal, Jones argues the district court erred when it admitted, under Federal Rule of Evidence 404(b), evidence of his 2011 conviction for possessing a controlled substance with intent to deliver. "We review the admission of evidence under Rule 404(b) for abuse of discretion." *United States v. Riepe*, 858 F.3d 552, 559 (8th Cir. 2017).

Rule 404(b)(1) states: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." For example, courts should not admit evidence of past convictions that serve only to prove a defendant had a propensity to commit criminal acts. *See Riepe*, 858 F.3d at 560 ("This Court has consistently construed Rule 404(b) as a rule of inclusion, precluding only evidence that is relevant solely to the defendant's character." (quoting *United States v. Aranda*, 963 F.2d 211, 215 (8th Cir. 1992)). This, Jones argues, is the precise

problem with admitting the 2011 Iowa conviction—it served only to prove whether or not he had a propensity to commit criminal acts.

The government responds that the felony conviction was admissible for two reasons. First, it was admissible to establish two elements of the felon in possession of a firearm charge—he was convicted of a felony and he knew of such conviction. Second, it was admissible under Rule 404(b)(2), which permits prior-bad-acts evidence to be used "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." We have held that, to be admissible under Rule 404(b):

> The evidence must be (1) relevant to a material issue raised at trial, (2) similar in kind and not overly remote in time to the crime charged, (3) supported by sufficient evidence to support a jury finding that the defendant committed the other act, and (4) of probative value not substantially outweighed by its prejudicial effect.

*United States v. Monds*, 945 F.3d 1049, 1052 (8th Cir. 2019).

After carefully considering these factors, we conclude the district court did not abuse its discretion in admitting this evidence. Jones's prior conviction was both relevant to the elements of the felon in possession of a firearm charge, as well as "relevant to the material issue of [Jones's] state of mind." *United States v. Davis*, 867 F.3d 1021, 1029 (8th Cir. 2017). Indeed, "[i]t is settled in this circuit that a prior conviction for distributing drugs, and even the possession of user-quantities of a controlled substance, are relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs." *Id.* (quoting *United States v. Horton*, 756 F.3d 569, 579 (8th Cir. 2014)).

## C. Sufficiency of the Evidence

Jones filed a motion for judgment of acquittal. "We review *de novo* challenges to the sufficiency of the evidence, viewing 'the evidence in the light most

favorable to the guilty verdict' and 'granting all reasonable inferences that are supported by that evidence.'" *United States v. Garbacz*, 33 F.4th 459, 466 (8th Cir. 2022) (quoting *United States v. Johnson*, 745 F.3d 866, 869 (8th Cir. 2014)).  We will reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Lussier*, 844 F.3d 1019, 1023 (8th Cir. 2017).

First, Jones argues there was not sufficient evidence for conspiracy to distribute.  "To convict an individual of conspiracy to distribute a controlled substance under 21 U.S.C. § 846, the Government must prove (1) a conspiracy to distribute [the controlled substance] existed; (2) the defendant knew about the conspiracy; and (3) the defendant knowingly became a part of the conspiracy." *United States v. Lewis*, 976 F.3d 787, 794 (8th Cir. 2020) (quoting *United States v. Bradshaw*, 955 F.3d 699, 705 (8th Cir. 2020)).  Viewing the evidence in the light most favorable to the jury verdict, there was a reasonable inference from the facts and circumstances that there was a conspiracy between Ellis and Jones to distribute cocaine of which Jones knowingly became a part.  *See United States v. Slagg*, 651 F.3d 832, 840 (8th Cir. 2011) ("An agreement to join a conspiracy 'need not be explicit but may be inferred from the facts and circumstances of the case.'" (quoting *United States v. Rodriguez-Mendez*, 336 F.3d 692, 695 (8th Cir. 2003)).  On three different occasions, the MINE Task Force surveilled Jones making a stop at Ellis's residence before Ellis completed a drug sale transaction with the CI.  Once, it appears that Ellis made a phone call to Jones while the CI was present.  Furthermore, the search of Jones's residence produced significant evidence of drug distribution: more than $150,000 cash, firearms, ammunition, scales, notes reflecting drug transactions, and other drug paraphernalia.

Second, Jones argues there was insufficient evidence for the unlawful possession of a firearm charge.  In particular, he says there was no evidence he possessed the firearms because the firearms belonged to Nashia.  In advancing this argument, however, Jones ignores the evidence suggesting he constructively possessed the guns.  *See United States v. Garrett*, 648 F.3d 618, 622 (8th Cir. 2011)

(stating possession can be either actual or constructive). "Constructive possession exists when a person 'has dominion and control over the firearm itself or over the premises in which the firearm [is] located.'" *United States v. Whitehead*, 995 F.3d 624, 627 (8th Cir. 2021) (alteration in original) (quoting *United States v. Ellis*, 817 F.3d 570, 576 (8th Cir. 2016)). Law enforcement found two firearms in Jones's bedroom: a 45-caliber handgun was between the mattress and the box-spring and an "AK-style rifle" was "under the bed, beneath where the handgun and the rifle magazines were located." The firearms were located on the west side of the bed, the same side where Jones was found. In addition, one agent testified that the east side of the bedroom had items that were more consistent with a female's use including jewelry boxes. This evidence was sufficient for a reasonable jury to find Jones constructively possessed the firearms.

Lastly, Jones argues there was insufficient evidence to support the forfeiture of the cash seized by law enforcement during the search of his residence. This court reviews the district court's factual findings for clear error, and we review de novo the conclusion of whether the facts make the seized currency subject to forfeiture. *United States v. Dodge Caravan Grand SE/Sport Van*, 387 F.3d 758, 761 (8th Cir. 2004). Jones argues there was no substantial connection between the seized currency and the drug offense because there was insufficient evidence that he was a part of a conspiracy—but we've already resolved that issue against him. Then he says in a conclusory fashion that the evidence found at Jones's home was not sufficient to establish a nexus. Viewing the evidence in the light most favorable to the jury verdict, it showed Jones had a reported income of $21,463 in 2018, had not filed taxes in 2019, that he conspired with Ellis to distribute drugs, stacks of cash were found hidden in his home, and an expert testified drug-dealers generally avoid banks and instead store their money in their home, a stash location, or with a trusted person. Therefore, Jones's argument is meritless.

## D. Constitutional Rights

Jones also presents several arguments that his constitutional rights were violated during the trial. We address them each in turn, but conclude they are without merit.

Jones argues the government violated his due process rights when it disclosed certain evidence shortly before his then-scheduled August 2021 trial. Jones styles this as a violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). We discern no *Brady* violation because Jones has not identified on appeal any evidence he was unable to use at trial, which ultimately took place in December 2021. *See United States v. Jeanpierre*, 636 F.3d 416, 422 (8th Cir. 2011) (providing, "due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial" (quoting *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005)).

Next, Jones argues the government violated his rights under the Confrontation Clause of the Sixth Amendment when the government indicated before trial that the CI would testify, but ultimately did not. Because the CI did not otherwise testify, we understand his argument to hinge on the admission of the recordings of the CI's interactions with Ellis during the controlled buys. Assuming this argument is properly preserved for appeal, we conclude it fails because the CI's statements in the recordings were not testimonial. *See United States v. White*, 962 F.3d 1052, 1055 (8th Cir. 2020) (providing the limitations of the Confrontation Clause "appl[y] only to statements that are testimonial"). Indeed, Jones has not argued on appeal that these statements were testimonial. Instead, he focuses on what he perceives as the government's lackluster effort to secure the CI's in-person testimony. But there is no rule the government must call every witness it identified before trial. Moreover, if the CI had some crucial evidence that could have helped Jones, nothing prevented Jones from trying to secure the testimony.

Lastly, Jones argues that the government violated his due process rights by not laying a proper foundation for the controlled-buy recordings because there was no evidence the CI consented to the recordings. For this reason, he argues the recordings were merely evidence of a warrantless intrusion on the CI and Ellis—i.e., the recordings violated their Fourth Amendment rights. These arguments were not raised below; therefore, they would be reviewed for plain error. *See United States v. Diaz-Ortiz*, 927 F.3d 1028, 1030 (8th Cir. 2019). However, Jones does not have standing to make this argument because it asserts only the Fourth Amendment rights of others and not himself. *See United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)).[4]

### III. Conclusion

The judgment of the district court is affirmed.

_____

_____

[4]While his appeal was pending, Jones sent a letter alerting the court to the fact he wanted his sentence challenged on the basis that he had erroneously been subjected to the career offender enhancement. "It is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel." *United States v. Shaw*, 965 F.3d 921, 929 n.4 (8th Cir. 2020) (quoting *United States v. Carr*, 895 F.3d 1083, 1090 (8th Cir. 2018). Thus, we decline to consider this additional issue raised by Jones.