**[Cite as *State v. Marr*, 2020-Ohio-3898.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28604 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-4851/1 |
| | : | |
| WILLIAM MARR | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of July, 2020.

. . . . . . . . . . .

MATHIAS H. HECK JR. by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} William Marr appeals from his conviction on charges of aggravated possession of drugs, having a weapon while under disability, possession of heroin, and possession of drug paraphernalia.[1]

{¶ 2} Marr advances two assignments of error. First, he contends his convictions were against the manifest weight of the evidence. Second, he claims prosecutorial misconduct deprived him of a fair trial.

{¶ 3} The present appeal stems from a traffic stop that occurred on the night of December 28, 2018. Around 10:30 p.m., West Carrollton patrol officer John Perry observed a truck driven by Marr make an illegal left turn. Perry proceeded to make a traffic stop. As he approached the driver's side of the vehicle, Perry noticed a piece of opaque plastic in the rear window partially obstructing his view of the passenger's side of the vehicle. As he got closer, however, the officer could see a front-seat passenger who was later identified as Brian Eades.

{¶ 4} After checking identification for both men, Perry spoke with Marr outside of the truck. The officer asked whether the truck contained anything illegal. Marr responded, "As far [as] I'm concerned, no." (Trial Tr. Vol. II at 142.) Perry then requested permission to search the truck, and Marr responded, "As long as I don't get in trouble for anything." (*Id.*) Perry "didn't really take that as a yes or no answer[.]" (*Id.* at 144.) After additional discussion, however, Marr granted the officer unambiguous consent to search. At that point, a second officer had arrived to assist. Eades exited the truck and granted Perry

---

[1] A jury also found Marr guilty of other offenses that the trial court merged into those set forth above for sentencing.

permission to search him. The search resulted in the discovery of a digital scale in Eades' coat pocket. The scale was coated with a crystal substance suspected to be methamphetamine. After finding the scale in Eades' possession, Perry began searching the truck. He found a black plastic handgun on the back driver's side floorboard. The plastic gun was not a real weapon. Perry also saw a cup holder between the front seats. It was slightly ajar with the side toward the driver raised up. Perry lifted the cup holder and found a large bag of what appeared to be methamphetamine, a loaded black revolver, a silver tin, and a methamphetamine pipe under a black pouch. The tin contained 10 gel capsules.

{¶ 5} After being Mirandized and agreeing to speak with Perry, Marr stated that the only illegal item he knew about in the truck was the pipe, which had been found underneath the other items. When asked specifically whether he knew anything about the drugs or the gun, Marr stated that he had been with Eades a couple of days earlier when Eades had purchased a revolver-style handgun. As a trained evidence technician, Perry unsuccessfully attempted to obtain fingerprints from various locations on the handgun. He also was unable to obtain fingerprints from the other items. No DNA testing was done on any of the items because the crime lab would "not accept touch DNA on non-violent felonies." (*Id.* at 170.)

{¶ 6} On cross-examination, Perry acknowledged that he searched Marr and did not find any drugs or other contraband. Perry also agreed that the opaque plastic in the truck's rear window prevented him from seeing what Eades was doing as he followed the vehicle prior to the stop. In addition, while speaking with Marr outside the truck, Perry only could see Eades, who remained inside the truck, from about his "mid-back" up. He did

not observe any furtive movements by Eades. Perry estimated that it would have taken 15 to 30 seconds for someone to lift the cup holder and place the contraband underneath it. The officer also recognized that either occupant of the truck could have lifted up the cup holder to place items there. Perry additionally testified that Marr denied knowing the handgun or the drugs were inside the truck. Finally, Perry acknowledged that Eades had pled guilty to a weapon-under-disability charge based on his possession of the black revolver found under the cup holder.

{¶ 7} The next witness at trial was Sarah Mikell, a forensic scientist with the Ohio Bureau of Criminal Investigation. She testified that the plastic bag referenced above contained methamphetamine. The 10 capsules contained a mixture of tramadol, heroin, fentanyl, and acetyl fentanyl. The only other prosecution witness was John Garwood, a West Carrollton police officer. He stated that he tested the operability of the black revolver in Marr's truck and found it to be operable.

{¶ 8} The final witness at trial was Eades, who was called by the defense. At the outset of Eades' testimony the trial court made clear in open court that as a result of his plea agreement with the State no drug charges could be brought against him based on his testimony. (*Id.* at 228.) Eades proceeded to testify that the black revolver belonged to him and that it had been located on his person prior to the traffic stop. Eades likewise testified that the drugs found under the cup holder belonged to him. Eades testified that Marr had no control over the drugs. (*Id.* at 232.) He explained that he had placed the drugs on the front passenger's side floorboard near his feet while riding around prior to the traffic stop. According to Eades, the drugs "weren't concealed" while the two men were riding around. Eades testified that he moved the drugs and placed them under the

cup holder after officer Perry got behind the truck and activated his overhead lights. Eades stated that he did not ask Marr for permission to place the drugs there, and Marr did not tell him to put the drugs there. According to Eades, it took him only "a second or two" to place everything under the cup holder, and Marr was busy driving at the time. Eades also testified that Marr never touched any of the contraband items, which were not visible to him after being placed under the cup holder.

{¶ 9} On cross-examination, Eades admitted having pled guilty to possessing the revolver at issue. He also admitted having a history of drug use and completing a drug rehabilitation program.   Eades stated that he and Marr had been friends for a couple of years. When asked how they met, Eades responded that they had met in the Madison Correctional Institution. The prosecutor then asked, "So that's in prison?" Eades responded affirmatively. (*Id.* at 239.) Eades acknowledged that he and Marr had smoked "meth" together on the day of the traffic stop. With regard to the black revolver, Eades testified that he had purchased it from a friend and that Marr had been with him at the time. Eades also agreed that he had denied knowing anything about the drugs and revolver at the scene. He admitted not telling police at the scene that all of the contraband items were his. He also admitted not coming forward any time prior to trial to exonerate Marr. Finally, he admitted that his prior plea and his immunity gave him the ability to say anything he wanted to at Marr's trial.

{¶ 10} On re-direct examination, Eades reiterated that he pled guilty to the weapon charge in exchange for an agreement that no drug charges would be pursued against him. He stated that he was taking responsibility for the drugs because they were his. He also insisted that his testimony was true. On re-cross-examination, Eades acknowledged

that he had purchased the methamphetamine the day of the traffic stop and that he had been with Marr "most of the day." (*Id.* at 247.)

{¶ 11} Based on the evidence presented, Marr was found guilty of the charges set forth above. The trial court imposed an aggregate three-year prison sentence. This appeal followed.

{¶ 12} In his first assignment of error, Marr contends his convictions for the drug offenses (other than the paraphernalia charge to which he pled guilty) and the weapon-related offenses were against the manifest weight of the evidence. The only issue Marr raises is whether the weight of the evidence supported a finding that he knowingly possessed the drugs and the black revolver inside the truck. Because Marr did not have actual possession of those items, he recognizes that the issue is whether he constructively possessed them. Marr's entire substantive argument is as follows:

> * * * [T]he view of the inside of the car was obstructed so Officer Perry could not observe any possible furtive movements during the stop. The opaque piece of plastic in the rear passenger side window obstructed Officer Perry from seeing Mr. Eades from the mid-back down, including not being able to see his hands. (Tr. at pp. 182-188). Mr. Marr denied knowledge of the methamphetamine, handgun, and heroin capsules. (Tr. at p. 159). Mr. Marr did acknowledge he knew a pipe was inside the vehicle, but all other contraband was found on top of the pipe and could have been placed on top of the pipe unbeknownst to Mr. Marr. (*See* Tr. at pp. 153-159). The drugs and gun were covered so as Mr. Marr could not see the items in the center console. (Tr. at 235). Moreover, Officer Perry searched

Mr. Marr and found no drugs or drug paraphernalia on his person. (Tr. at p. 180). Finally, Mr. Eades was sitting in the front passenger seat and had easy access to the center console where the items were found. (Tr. at p. 181). Mr. Eades testified that the gun and methamphetamine were his and Mr. Marr did not have control over the items. (Tr. at p. 232).

Therefore, the State failed to establish Mr. Marr possessed, carried, or had the gun, methamphetamine, or heroin because Officer Perry did not observe furtive movements, the State failed to prove Mr. Marr knew the items were in the car, and Mr. Marr's mere proximity to the items hidden in the center compartment is insufficient to establish constructive possession. The State failed to prove the possession necessary for Counts I, II, III, IV, V, and VI.

(Appellant's brief at 9-10.)

{¶ 13} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} With the foregoing standards in mind, we conclude that Marr's convictions

were not against the manifest weight of the evidence. "A person has constructive possession of something if he is aware of its presence and is able to exercise dominion and control over it, 'even though [it] may not be within his immediate physical possession.' " *State v. Zaragoza*, 2d Dist. Montgomery No. 27290, 2017-Ohio-7944, ¶ 32, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. Constructive possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). A person is not guilty of an offense unless his conduct involves a voluntary act. R.C. 2901.21(A)(1). "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(F)(1). "So constructive possession requires that the person was conscious of the presence of the object." *State v. Levell*, 2d Dist. Montgomery No. 27489, 2017-Ohio-9055, ¶ 17. The presence of drugs or other contraband in close proximity to a defendant may establish constructive possession where the defendant is aware of the item's presence. *State v. Townsend*, 2d Dist. Montgomery No. 18670, 2001 WL 959186, *3 (Aug. 24, 2001); *see also State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 41 (recognizing that "when one is the driver of a car in which drugs are within easy access of the driver, constructive possession may be established" because possession of the car is a strong indication of control over the car's contents); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988) ("Ohio law is clear that a suspect can be in 'constructive possession' of * * * property without having actual physical possession of the property if it is located within premises under the suspect's control and

he was conscious of its presence.").

{¶ 15} Here Marr was driving his own truck that contained a handgun, drugs, and drug paraphernalia concealed under a cup holder right next to his seat. The cup holder was slightly raised up toward his side of the vehicle. When Perry asked whether the truck contained anything illegal, Marr responded, "As far [as] I'm concerned, no." Perry then requested permission to search the truck, and Marr responded, "As long as I don't get in trouble for anything." Even if the handgun and drugs belonged to Eades, these equivocal answers supported a reasonable inference that Marr knew the contraband was inside the vehicle. In addition, Marr subsequently admitted that the drug paraphernalia found beneath the other items belonged to him. Eades also testified that the drugs were on the passenger-side floor board and were not concealed while the two men drove around that evening prior to the stop. On its face, the foregoing evidence was enough for the jury to conclude that Marr constructively possessed the handgun and the drugs discovered under the cup holder in his truck. The State's evidence supported a finding that Marr owned the truck, that he had dominion and control over the truck's contents, and that he was aware of the contraband's presence.

{¶ 16} Although Eades testified that the handgun and drugs belonged to him, the jury was not required to believe this testimony, particularly in light of the immunity from further prosecution that Eades had received by virtue of his plea bargain. But even if we accept Eades' testimony about his ownership of the weapon and the drugs, the jury reasonably still could have found Marr guilty. The State was not required to prove Marr's ownership of the contraband. *State v. Adams*, 2d Dist. Clark No. 2018-CA-80, 2019-Ohio-1140, ¶ 21. It was required to prove only his constructive possession of the items as

evidenced by his knowing dominion and control over them. As set forth above, Marr's knowledge of the presence of the items can be inferred from his equivocal answers to the officer's questions prior to the search and other evidence. Even if we accept Eades' version of events, Eades placed the handgun and the drugs under the cup holder in response to officer Perry attempting to initiate a traffic stop. Although Marr was driving the truck, he was sitting next to Eades at the time. Under these circumstances, the jury reasonably could have inferred that Marr would have seen Eades conceal the contraband. We note too that Eades and Marr were capable of simultaneously possessing the contraband under the cup holder. *State v. Cook*, 10th Dist. Franklin No. 19AP-353, 2020-Ohio-2844, ¶ 39, citing *State v. Sherfey*, 5th Dist. Fairfield No. 13-CA-37, 2014-Ohio-1717, ¶ 34. Alternatively, Eades could have been convicted solely based on his actual possession of the firearm before placing it under the cup holder. Therefore, the fact that Eades pled guilty to possessing the firearm did not preclude a finding that Marr constructively possessed it.

{¶ 17} If we accept Eades' version of events—which the jury was not required to do—the only potential issue we see is whether Marr knowingly had dominion and control over the contraband for a sufficient amount of time to have been able to end his possession, as required by R.C. 2901.21(F)(1) to make his constructive possession voluntary. If we assume, arguendo, that Marr had no knowledge of the presence of the handgun or the drugs until Eades placed them under the cup holder just before officer Perry stopped the truck, an assumption the record does not necessarily compel, Marr could argue that his possession of the contraband was too brief to qualify as voluntary under the statute. But Marr makes no argument that his possession of the firearm and

drugs was knowing but involuntary. In his opening brief, he asserts that he did not see Eades place the handgun and the drugs under the cup holder and, therefore, was unaware of their presence. In response to the State's argument that Marr was aware, Marr argues in his reply brief that he was not able to exercise dominion and control over the contraband. Based on the reasoning set forth above, we believe the jury reasonably could have found that Marr was aware of the handgun and drugs concealed under the cup holder and that he was able to exercise dominion and control over the items. Accordingly, we find his argument to be unpersuasive. This is not an exceptional case in which the evidence weighs heavily against Marr's conviction. The first assignment of error is overruled.

{¶ 18} In his second assignment of error, Marr contends prosecutorial misconduct deprived him of a fair trial. Specifically, he claims the prosecutor elicited testimony about him previously being in prison and then reminded the jury of that fact during closing arguments. Marr asserts that these actions by the prosecutor violated Evid.R. 404(B)'s prohibition against prior-bad-acts evidence. We note, however, that Marr did not object at trial to the conduct about which he now complains. Therefore, we are limited to plain-error review.

{¶ 19} The initial reference at issue occurred during cross-examination of Eades. The prosecutor asked Eades how he met Marr. Eades responded that they had met "in Madison Correctional Facility the first time." (Trial Tr. Vol. II at 238-239.) Marr cites nothing to suggest that the prosecutor knew Eades would give this response, and the question was not improper. Eades testified on direct examination that he and Marr were friends, and the prosecutor was entitled to ask how they had met. After Eades mentioned the

"Madison Correctional Facility," the prosecutor follow up by asking, "So that's in prison?" Even if it were improper for the prosecutor to seek clarification that the Madison Correctional Facility was a prison, the jury already had been made aware of Eades' prior convictions for a felony offense of violence and felony drug abuse. That being so, the fact that he had served prison time likely was not particularly surprising.

{¶ 20} Thereafter, in his closing argument, the prosecutor suggested that it was implausible for Marr not to have known about the firearm and drugs in his truck. The prosecutor began that portion of his argument by saying: "Let me ask you this. They were driving around, per Eades, for a couple of hours that night. Are you telling me that this man who is his friend that he met in the joint doesn't know anything that's on him at all? (*Id.* at 266.) The prosecutor proceeded to cite various pieces of circumstantial evidence to establish that Marr knew about the presence of the handgun and drugs while the two men were riding around. (*Id.* at 266-269.) The prosecutor's single reference in closing argument to Marr and Eades meeting in "the joint" was supported by Eades' trial testimony. Even if the prosecutor should not have made the statement, we see no basis for a new trial.

{¶ 21} On plain-error review, Marr is required to establish both the existence of misconduct and that but for the misconduct the outcome at trial clearly would have been otherwise. *State v. Kuck*, 2016-Ohio-8512, 79 N.E.3d 1164, ¶ 28 (2d Dist.). Here the record fails to persuade us that the outcome below clearly would have been otherwise but for the prosecutor eliciting testimony on cross-examination about Marr and Eades meeting in prison and then referencing the two men meeting in "the joint" during closing arguments. The second assignment of error is overruled.

{¶ 22} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Sean Brinkman
Hon. Timothy N. O'Connell