[Cite as *State v. Gibson*, 2021-Ohio-1255.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

STATE OF OHIO,                           :          **O P I N I O N**

        Plaintiff-Appellee,         :

        - vs -                                 :          **CASE NO. 2020-L-073**

TYRONE GIBSON,                         :

        Defendant-Appellant.      :

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2020 CR 000213.

Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, Ohio 44077 (For Plaintiff-Appellee).

*Edward M. Heindel,* 2200 Terminal Tower, 50 Public Square, Cleveland, Ohio 44113 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}  Appellant, Tyrone Gibson, appeals his convictions for rape in violation of R.C. 2907.02.  We affirm.

{¶2}  Gibson was indicted on 19 counts of rape, with attendant repeat violent offender specifications, and 18 counts of sexual battery, with one attendant repeat violent offender specification.  The charges stem from allegations that Gibson engaged in numerous acts of sexual conduct with his girlfriend's daughter, T.R., beginning when she

was 12 years old. T.R. disclosed the abuse to her mother after Gibson moved from their home when T.R. was 15 years old.

{¶3} After trial, the jury found Gibson guilty on all counts, and the trial court found him guilty of the repeat violent offender specifications.[1] The sexual battery counts and one rape count merged into the 18 remaining rape counts for purposes of sentencing. The trial court sentenced Gibson to a total prison term of life in prison with parole eligibility after serving 136 years.

{¶4} Gibson assigns three errors. The first two assignments state:

{¶5} "[1.] The convictions for rape and sexual battery were not supported by sufficient evidence."

{¶6} "[2.] The convictions for rape and sexual battery were against the manifest weight of the evidence."

{¶7} As set forth above, the jury found Gibson guilty of 19 counts of rape and 18 counts of sexual battery. Of the 19 counts of rape: one count charged Gibson with rape of a person under the age of 13, in violation of R.C. 2907.02(A)(1)(b), with an enhanced sentencing finding of force or threat of force pursuant to R.C. 2971.03; one count charged Gibson with rape through administering a drug, intoxicant, or controlled substance causing the victim substantial impairment, in violation of R.C. 2907.02(A)(1)(a); and 17 counts charged Gibson with rape in which force or threat of force is an element of the offense, in violation of R.C. 2907.02(A)(2). For sentencing purposes one count of forcible rape merged with the one count of rape through administering a drug, intoxicant, or controlled substance causing the victim substantial impairment, and the trial court

_____

1. The parties stipulated to Gibson's prior conviction, and Gibson waived a jury trial on this issue only.

sentenced Gibson on the latter count. Gibson argues the evidence does not support a finding of force or threat of force, administration of an intoxicant, and substantial impairment.

{¶8} The jury also found Gibson guilty on 18 counts of sexual battery in violation of R.C. 2907.03(A)(5), which prohibits sexual conduct by a person in loco parentis of the victim. For sentencing purposes, all the sexual battery offenses merged with the rape offenses. Gibson argues that the evidence did not support a finding that he was in loco parentis of T.R.

{¶9} At the outset, we note that "[c]ourts have held, in merged offense cases, where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient evidence to support the offenses that merged with the elected offense." (Citations omitted.) *State v. Henderson*, 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-5123, ¶ 9; *accord State v. Cook*, 11th Dist. Lake No. 2016-L-079, 2017-Ohio-7953, ¶ 62. Because all the sexual battery offenses merged with the rape offenses, a conclusion that the rape convictions are supported by the evidence renders harmless any error relative to evidence of sexual battery. Nonetheless, we will discuss Gibson's argument with respect to the "in loco parentis" aspect of the sexual battery offenses because it is intertwined with the element of force or threat of force required to sustain the rape convictions.

{¶10} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *State v. Davis*, 11th Dist. Lake No. 2019-L-170, 2021-Ohio-237, ¶ 187. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. "In a sufficiency-of-the-

3

evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, —— Ohio St.3d ——, 2020-Ohio-6670, —— N.E.3d ——, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶11} Unlike a challenge to the sufficiency of the evidence, a challenge to the manifest weight of the evidence "concerns 'the inclination of the *greater amount of credible evidence * * ** to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In reviewing the manifest weight of the evidence, we must "consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences, and determine whether '"the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'" *State v. Settle*, 11th Dist. No. 2015-T-0119, 2017-Ohio-703, 86 N.E.3d 35, ¶ 51, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 18-19.

{¶12} Upon a conclusion that the trial court's decision is not against the manifest weight of the evidence, an appeals court need not do a separate analysis as to sufficiency because a conclusion that a decision is not against the manifest weight necessarily means it was supported by sufficient evidence. *Masters* at ¶ 17.

{¶13} With respect to the conviction for rape in violation of R.C. 2907.02(A)(1)(b), that statute provides, "No person shall engage in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender

4

knows the age of the other person." On this count, the jury additionally found Gibson used force, which enhances the sentence under R.C. 2971.03. As to the convictions for rape in violation of R.C. 2907.02(A)(2), that statute provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Force" is "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶14} With respect to the conviction for rape in violation of R.C. 2907.02(A)(1)(a), that statute provides, "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [f]or the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception."

{¶15} With respect to the offense of sexual battery in violation of R.C. 2907.03(A)(5), that statute provides, "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." The Ohio Supreme Court has explained:

> The phrase "person in loco parentis" in R.C. 2907.03(A)(5) applies to a person who has assumed the dominant parental role and is relied upon by the child for support. This statutory provision was not designed for teachers, coaches, scout leaders, or any other persons who might temporarily have some disciplinary control over a child. Simply put, the statute applies to the people the child goes home to.

*State v. Noggle,* 67 Ohio St.3d 31, 33, 615 N.E.2d 1040 (1993).

{¶16} Here, at trial, T.R., her mother, and her brother testified as part of the state's case. T.R.'s mother testified that T.R. was born on January 8, 1999. T.R.'s mother met

5

Gibson in 2009, and they later began a romantic relationship. Gibson "pretty much" stayed with her at her home in Cleveland, where she lived in 2010-2011 with two of her children: T.R. and J.P, a boy one-year older than T.R. After living in Cleveland, T.R., J.P., and their mother moved to Painesville. Gibson also stayed with them at the Painesville home, where he usually slept in the living room on a pile of blankets on the floor. T.R.'s mother testified that she and Gibson fought "all the time" and Gibson would hit her. T.R.'s mother stated "[a] lot" of the physical violence took place in front of T.R. Gibson would also threaten T.R.'s mother in front of T.R., saying, "B*tch, I'll kill you."

{¶17} T.R. testified to 18 separate instances of Gibson abusing her through acts of sexual conduct beginning when she was 12 years old and continuing until she was 15. The abuse included digital penetration of T.R.'s vagina and anus, vaginal intercourse, anal intercourse, fellatio, and insertion of a foreign object into T.R.'s vagina and anus. With some exceptions, T.R. did not testify as to Gibson using any overt force or threat of force on her in order to engage in these sexual acts. T.R. testified that, on two occasions, she and Gibson drank sangria and smoked marijuana prior to engaging in anal intercourse.

{¶18} T.R. further testified that, during one instance of vaginal intercourse with Gibson in the living room of the Painesville home, J.P. came downstairs to get a drink from the kitchen. Although T.R. and Gibson were visible from the steps, J.P. did not acknowledge them, and he proceeded to the kitchen and went back upstairs. The next day, Gibson accused J.P. of having sex with T.R. T.R. falsely confirmed to her mother that she and J.P. were having sex, and her mother then sent J.P. to live with his

grandmother. T.R. explained that she lied to confirm Gibson's accusation because she was scared of Gibson.

{¶19} J.P. testified that he witnessed Gibson and T.R. laying in the living room under a blanket on a night when he went downstairs to get a drink from the kitchen. He indicated that it did not register to him what was happening between T.R. and Gibson. The next day, Gibson accused J.P. of having sex with T.R. J.P. denied this allegation and testified that he and his sister have never engaged in sexual activity.

{¶20} Based upon the testimony, there is no dispute that Gibson and T.R.'s mother were not married. However, the testimony indicates that Gibson was regularly present and slept at T.R.'s home. T.R.'s mother additionally testified that Gibson frequently brought his grandchildren over to visit and stay for multiple days. In addition, T.R. and her mother testified that, although Gibson did not contribute to household expenses, he contributed to the household by often looking after T.R. and J.P. while their mother worked and attended school, along with during a time their mother was suffering from illness. Moreover, T.R.'s mother testified that Gibson kept his vehicles and possessions at T.R.'s home, and T.R. testified that she referred to Gibson as her stepfather to others, although she referred to him as Tyrone when speaking with him. In addition, T.R. and her mother testified that they celebrated Father's Day with Gibson. We cannot say that the conclusion that Gibson was one of the "people the child goes home to" was against the manifest weight of the evidence. *See Noggle,* 67 Ohio St.3d 31, at 33. Accordingly, Gibson's argument that the weight of the evidence does not support that he was in loco parentis of T.R. is not well taken.

{¶21} Gibson's position as a parental figure is critical to the issue of force to sustain the rape convictions. With respect to people standing in parental positions, the Ohio Supreme Court has held:

> The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength.

(Citation omitted.) *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of syllabus.

{¶22} Here, T.R. and her mother testified that T.R. witnessed Gibson's repeated physical abuse of T.R.'s mother. T.R. testified that she witnessed physical injuries, both to her mother's face and her ankle, resulting from the abuse, which scared her. T.R. testified that Gibson regularly threatened her mother when they argued, saying "B*tch, I'll kill you." Further, T.R. testified that Gibson had threatened her. In addition, T.R. testified that the earliest incident of sexual conduct that formed the basis of a rape charge occurred when she was 12 years old, when she awoke to Gibson digitally penetrating her vagina. On another occasion, when T.R. was 13, Gibson told her to perform oral sex on him, and "he wouldn't take no for an answer." Thereafter, T.R. vomited. On another date, T.R. testified that she again performed oral sex on Gibson because he wanted her to, and she again vomited directly after. T.R. also testified as to an incident where she was lying on her back on T.R.'s blankets, and he "pushed" her, got on top of her, and then had vaginal intercourse with her.

{¶23} "'* * * Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by

8

fear or duress, the forcible element of rape can be established.'" *See Eskridge*, 38 Ohio St.3d at 58, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985). The jury could reasonably infer from the evidence that Gibson, a father figure to T.R., created an environment of physical abuse that pervaded T.R.'s home life to such an extent that the fear of physical violence overcame T.R.'s will for each occurrence of sexual conduct. Accordingly, Gibson's argument that the weight of the evidence does not support force or threat of force is not well taken.

{¶24} With respect to Gibson's argument regarding the evidence of administering intoxicants to T.R. rendering her substantially impaired, the Ohio Supreme Court has explained:

> The phrase "substantially impaired," in that it is not defined in the Ohio Criminal Code, must be given the meaning generally understood in common usage. As cogently stated by the appellate court, substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct.

*State v. Zeh*, 31 Ohio St.3d 99, 103-04, 509 N.E.2d 414, 418 (1987).

{¶25} T.R. testified that Gibson gave her sangria and marijuana to "loosen [her] up" for anal intercourse. T.R. maintained that the sangria was strong, and it made her feel "weak, like [she] didn't feel like [her]self." We cannot say that jury's determination that, for the purpose of preventing resistance, Gibson substantially impaired T.R.'s judgment or control by administering to her sangria and marijuana by force or threat of force was against the manifest weight of the evidence.

{¶26} With respect to T.R.'s credibility, Gibson maintains that her testimony was not credible because she testified that she falsely accused her brother of engaging in sexual conduct with her. However, T.R. testified that she was scared that if she did not

9

lie to confirm Gibson's accusations, Gibson would kill them. It was within the province of the jury to determine her credibility. *See State v. Unrue*, 11th Dist. Lake No. 2020-L-054, 2020-Ohio-6808, ¶ 16, quoting *State v. Jones*, 2d Dist. Clark No. 2005 CA 122, 2007-Ohio-2425, ¶ 24 ("'[T]he jury [i]s free to believe or disbelieve the testimony of any witness as to any issue, and the testimony of any one witness as to any material fact, believed by the trier of fact, is sufficient to prove any such fact.'"). Accordingly, Gibson's argument that T.R.'s testimony lacked credibility is not well taken.

{¶27} We conclude this is not the extraordinary case where the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See Thompkins*, 78 Ohio St.3d at 387. Accordingly, Gibson's convictions are not against the manifest weight of the evidence and are necessarily supported by sufficient evidence. Therefore, Gibson's first and second assigned errors lack merit.

{¶28} Gibson's third assigned error states:

{¶29} "[3.] The trial court erred when it permitted Gibson to be tried in his jail clothes."

{¶30} Gibson argues that it was error for the trial court to permit Gibson to be tried in his jail attire without warning him of the inherent risk in so proceeding.

{¶31} Prior to trial, Gibson moved for permission to wear civilian clothes during his trial, and the trial court granted the motion. However, prior to voir dire, defense counsel indicated that Gibson had chosen not to wear civilian clothes and to instead proceed in his prison attire. After the jury was selected and permitted to leave for the day, counsel and the court again discussed this issue:

10

THE COURT: Anything else?

[Prosecutor]: Just one more thing, Your Honor. Sorry. Juror Number 16, when during voir dire she did indicate that she knew the defendant from the jail, also provided that the defendant is sitting in court in his jail clothes. The state would just asked (sic.) for a limited instruction be given in regards to the defendant being in jail.

THE COURT: Well, to say what? I mean he's decided, he was given the opportunity to wear his civilian clothes and he has not, he's in jail clothes, so what is it you want me to tell the jury?

[Prosecutor]: Just not to infer anything by the defendant's incarceration.

THE COURT: All right. Why don't you guys craft what you want me to say in the instruction, what do you think?

[Defense counsel]: I would respectfully request an instruction saying that the jury shouldn't infer anything by the fact that Mr. Gibson is in jail clothes, he hasn't posted bond on this case which is true.

THE COURT: Usually we go to great lengths to make sure that they don't know they are in jail. Mr. Gibson kind of didn't cover up the fact. So do you want me to call attention to it unnecessarily and if you want me to craft something. If you want me to read it get it to me.

{¶32} Thereafter, the parties agreed to an instruction, which was given to the jury prior to and following trial, stating:

THE COURT: * * * I want to read one instruction to you. During the trial in this case the defendant, Tyrone Gibson appears in attire provided by the Lake County jail. You're instructed not to draw any inference from this fact. His apparel should not influence you in any way whatsoever in the trial of this case.

{¶33} On appeal, Gibson argues that he could not have a fair trial while dressed in prison attire, and the "trial court should have done more to prevent this situation." However, given that defense counsel requested to proceed with Gibson dressed in his jail attire, any error in so proceeding was invited. "The doctrine of invited error holds that

11

a litigant may not 'take advantage of an error which he himself invited or induced.'" *State v. Hope*, 11th Dist. Trumbull No. 2018-T-0053, 2019-Ohio-2174, 137 N.E.3d 549, ¶ 147, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus.

{¶34} As the trial court permitted Gibson to be tried in civilian clothing, but he chose to proceed instead in his prison attire, he cannot now argue an error that he invited. Accordingly, Gibson's third assigned error lacks merit.

{¶35} The trial court's judgment is affirmed.

MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.