[Cite as *State v. Perry*, 2021-Ohio-2183.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>　　　　　Plaintiff-Appellee,<br><br>　　- v -<br><br>CLARENCE A. PERRY,<br><br>　　　　　Defendant-Appellant. | CASE NO.  2021-L-005<br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2020 CR 000794 |

# **O P I N I O N**

Decided: June 28, 2021
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}　Defendant-appellant, Clarence A. Perry, appeals his convictions for Having Weapons While Under Disability and Improperly Handling Firearms in a Motor Vehicle following a jury trial in the Lake County Court of Common Pleas.　For the following reasons, Perry's convictions are affirmed.

{¶2}　On September 25, 2020, the Lake County Grand Jury indicted Perry for Having Weapons While Under Disability (Count 1), a felony of the third degree in violation

of R.C. 2923.13(A)(2), and Improperly Handling Firearms in a Motor Vehicle (Count 2), a felony of the fourth degree in violation of R.C. 2923.16(B). Both Counts included a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04.

{¶3} On October 2, 2020, Perry was arraigned and entered a plea of "not guilty."

{¶4} On November 2-3, 2020, a jury trial was held. The following witnesses testified on behalf of the State:

{¶5} Officer Salvatore Continenza of the Willoughby Hills Police Department testified that, on August 20, 2020, he was patrolling the westbound lanes of I-90. At about 12:30 a.m., a traffic stop of a white Chevy Cruze with heavily tinted windows was initiated by Sergeant Henry Boepple. Continenza stopped his cruiser to assist. Boepple had located a firearm in the vehicle and both officers drew their weapons. Perry was the driver of the vehicle and there was a female passenger (Julia Bozeman). Both occupants of the vehicle were removed and secured. Officer Continenza located a second firearm under the driver's seat.

{¶6} Officer Channon Vachet of the Willoughby Hills Police Department testified that he assisted at the August 20, 2020 stop initiated by Sergeant Boepple. Vachet photographed the firearm located by Officer Continenza under the driver's seat and another firearm located by Boepple in the glove box. He also collected a DNA swab from Perry.

{¶7} Raymond Jorz, the supervisor of the latent print and firearms unit of the Lake County Crime Laboratory, tested a Sig Sauer P299 handgun, magazines, and ammunition submitted by the Willoughby Hills Police Department but was not able to lift any prints. The firearm was tested and found operable.

2

{¶8} Karen Zavarella, the DNA supervisor at the Lake County Crime Laboratory, analyzed a DNA swab from the Sig Sauer and identified three potential contributors of skin cell DNA, one of which was a predominant contributor yielding a complete DNA profile while the other two contributors yielded incomplete profiles. Perry's DNA profile matched that of the predominant contributor and, statistically, it was 95.1 trillion times more likely that Perry was one of the contributors than that there were three unknown contributors.

{¶9} Sergeant Boepple testified that, on the night in question, he initiated the stop of a white Chevy sedan because of its heavily tinted windows and the lack of a visible license plate. Boepple determined that Perry was operating the vehicle but that it belonged to the passenger (Bozeman). When Bozeman opened the glove box to retrieve the vehicle registration, Boepple noticed the grip of a handgun. Both Perry and Bozeman were removed from the vehicle. The handgun in the glove box was an unloaded Bersa. The Sig Sauer found by Officer Continenza had a round in the chamber and was accessible to the driver of the vehicle, positioned two to four inches under the driver's seat. Bozeman acknowledged that she was aware of the Bersa in the glove box but not the Sig Sauer. Given her size and the fact that the passenger's seat was laid back at the time of the stop (Bozeman appeared to be sleeping), Boepple did not believe that she could have reached the Sig Sauer under the driver's seat without exiting the vehicle.

{¶10} Sergeant Boepple described Perry as "nervous" throughout the encounter. He asked Perry "if he had any weapons on him" and Perry responded, "he wasn't sure." Boepple asked the question again and he responded, "there shouldn't be."

{¶11} Officer Crespo of the Garfield Heights Police Department testified on behalf

3

of the defense that, on September 14, 2020, he stopped a vehicle being operated by Bozeman. She admitted there was a gun in the vehicle and the police recovered two loaded firearms and a magazine.

{¶12} On November 3, 2020, the jury found Perry guilty of Having Weapons While Under Disability and Improperly Handling Firearms in a Motor Vehicle.

{¶13} On December 10, 2020, the sentencing hearing was held. Perry was sentenced concurrently to 30 months in prison for Having Weapons While Under Disability and 12 months in prison for Improperly Handling Firearms in a Motor Vehicle.

{¶14} On December 15, 2020, Perry's sentence was memorialized in a Judgment Entry of Sentence.

{¶15} On January 14, 2021, Perry filed a Notice of Appeal. On appeal Perry raises the following assignments of error:

{¶16} "[1.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶17} "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A)."

{¶18} The evidentiary basis for a criminal conviction may be challenged on appeal on the grounds of the sufficiency and the weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), paragraph two of the syllabus.

> {¶19} With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."

4

Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

*Id.* at 386-387.

{¶20} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus,

following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶21} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) Black's, *supra*, at 1594.

*Thompkins* at 387.

{¶22} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at

5

42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")

*Id.*; *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25 ("a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?").

{¶23} Although distinct legal concepts, this court and others have recognized that, "[s]ince there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Owens*, 2018-Ohio-1334, 109 N.E.3d 588, ¶ 26 (11th Dist.); *State v. Gibson*, 11th Dist. Lake No. 2020-L-073, 2021-Ohio-1255, ¶ 12 ("[u]pon a conclusion that the trial court's decision is not against the manifest weight of the evidence, an appeals court need not do a separate analysis as to sufficiency because a conclusion that a decision is not against the manifest weight necessarily means it was supported by sufficient evidence"); *Thompkins* at 388, quoting *Tibbs* at 42-43 ("[a] reversal based on the weight of the evidence * * * can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict").

{¶24} In order to convict Perry of Having Weapons While Under Disability, the State was required to prove beyond a reasonable doubt that he did "knowingly acquire, have, carry, or use any firearm or dangerous ordnance," and "has been convicted of any

6

felony offense of violence." R.C. 2923.13(A)(2). In order to convict him of Improperly Handling Firearms in a Motor Vehicle, the State had to prove beyond a reasonable doubt that he did "knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator * * * without leaving the vehicle." R.C. 2923.16(B).

{¶25} On appeal, Perry argues that "[t]here was no evidence that [he] possessed or had knowledge of the firearm the day he was stopped by the Willoughby Hills police officers." Appellant's brief at 5. In support of his claim, the following is cited: The vehicle was registered to Bozeman. She was subsequently stopped and found to be transporting loaded firearms. She demonstrated an awareness that unloaded firearms could be legally transported by acknowledging the unloaded firearm in the glove box but not the loaded firearm under the driver's seat. Although the Sig Sauer was accessible from the driver's seat, it was not visible from the driver's seat. There was no evidence as to how or when the Sig Sauer was placed under the driver's seat.

{¶26} Perry's argument challenges whether he did in fact "have" a firearm for the purposes of the Having Weapons While Under Disability conviction and whether he "knowingly" transported it for the purposes of Improperly Handling Firearms in a Motor Vehicle. Both of these elements may be proven by showing that Perry had constructive possession of the Sig Sauer. *State v. Body*, 8th Dist. Cuyahoga No. 109388, 2021-Ohio-703, ¶ 27-29.

{¶27} "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362

7

(1982), syllabus; *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). Accordingly, this court has held that "the presence of a firearm in the same area of the defendant without more is insufficient to support an inference of constructive possession." (Citation omitted.) *State v. Williams*, 11th Dist. Ashtabula No. 2020-A-0033, 2021-Ohio-1256, ¶ 26. Rather, constructive possession requires "the presence of an additional factor that would support a finding that [the defendant] was aware a firearm was in the vehicle." *Id.* at ¶ 27; *State v. Philpott*, 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 48 ("[t]o establish constructive possession, there must be evidence that the person exercised or had the power to exercise dominion and control over the object" and "that the person was conscious of the presence of the object").

{¶28} With respect to the sufficiency of the evidence, the issue before this court is whether the fact that the Sig Sauer was located in an area accessible to Perry combined with the presence of Perry's DNA on the weapon is sufficient to demonstrate constructive possession. We conclude that it is, i.e., that a reasonable juror could infer from this evidence that Perry knowingly possessed the Sig Sauer. We emphasize that, not only was the gun accessible to Perry, it was immediately accessible in that he only needed to reach under the seat to retrieve it. Moreover, there was testimony that the Sig Sauer was not accessible to Bozeman, the other occupant of the vehicle. Other Ohio courts have similarly concluded in cases involving firearms and narcotics. *See State v. Wilson*, 8th Dist. Cuyahoga No. 102231, 2015-Ohio-4979, ¶ 32 ("Wilson's presence in the hotel room" and "the presence of Wilson's DNA on the plastic bags" were sufficient to "support a finding that although the drugs were not in Wilson's immediate possession, he was able to exercise control over them and he was conscious of the drugs' presence"); *State v.*

8

*Henderson*, 2d Dist. Montgomery No. 26018, 2014-Ohio-4601, ¶ 26 (constructive possession demonstrated by the facts that Henderson was the only occupant of the vehicle he was driving and a handgun in the glove compartment contained his DNA).

{¶29} Also persuasive are several federal court decisions concluding that access to contraband combined with the presence of the defendant's DNA is sufficient for the issue of possession to be decided by the jury. *United States v. Whitehead*, 995 F.3d 624, 627 (8th Cir.2021) ("the jury had more than enough to find constructive possession" where "Whitehead was lying on the bed directly above where the gun was found" and "Whitehead's DNA [was] on the grip"); *United States v. Samora*, 954 F.3d 1286, 1292 (10th Cir.2020) ("[t]he DNA combined with Defendant's proximity to the firearm–as he was the sole occupant of the vehicle on the day the firearm was found in the center console–is sufficient to establish Defendant's constructive possession of the firearm")[1]; *United States v. Baker*, 839 Fed.Appx. 984, 993 (6th Cir.2021) ("[a] reasonable juror could infer * * * that [Baker] had at least constructive, if not actual, possession" of drugs based on evidence that "Baker had unlimited access to the residence * * * where the drugs were discovered" and "the bags containing the drugs * * * had Baker's DNA on them"). For decisions from other state jurisdictions, *see* Annotation, *Sufficiency of DNA Evidence for Weapons Possession Under State Law*, 58 A.L.R.7th Art. 5 (2020).

{¶30} We note that at least one Ohio appellate court has ruled that accessibility to contraband combined with the presence of the defendant's DNA on the contraband is not sufficient to demonstrate constructive possession. In *State v. Burney*, 10th Dist.

---

1. We acknowledge that Perry, unlike the defendants in *Samora* and *Henderson*, was not the sole occupant of the vehicle. These cases nonetheless have some persuasive force inasmuch as Perry was the only occupant of the vehicle with ready access to the Sig Sauer. Sergeant Boepple testified that Bozeman would have had to exit the vehicle and walk around to the driver's side to retrieve the weapon.

Case No. 2021-L-005

Franklin No. 11AP-0136, 2012-Ohio-3974, the court of appeals addressed this issue in the context of shared premises. The defendant was living in his mother's house with at least two siblings and a child. *Id.* at ¶ 21, 24. A shotgun, bearing the defendant's DNA, was found under a couch in the living room. *Id.* at ¶ 20, 25. The court ruled that the evidence was insufficient, adopting an argument similar to that raised by Perry in the present appeal: "Although the DNA on the gun supports an inference that defendant touched the gun at some point, and thus was aware of it, the evidence does not allow the inference that he touched it while it was in his mother's home and thus was aware of its presence there, facts the State seeks to infer to advance its constructive possession argument. Nor did the State prove the touching or awareness, necessary to support constructive possession, occurred after defendant's disability came to be or after the shotgun became a dangerous ordnance." *Id.* at ¶ 31.

{¶31} While the situation and legal arguments in *Burney* are comparable to those in the present case, we conclude that *Burney* is distinguishable and does not apply under the circumstances of this case. *Burney* involved contraband located in the common area of a house equally accessible to multiple individuals. The Sig Sauer was underneath the driver's seat and only accessible at the time of discovery to Perry as the driver of the vehicle. The difference between a residence and a vehicle in this context is of some consequence as the operator of a vehicle is presumed to have greater control over his or her surroundings than the occupant of a residence. *State v. Reed*, 6th Dist. Erie No. E-17-038, 2018-Ohio-4451, ¶ 16 ("Ohio courts have * * * recognized that 'the possession of the keys to [an] automobile is a strong indication of control over the automobile and all things found in or upon the automobile'") (citation omitted).

10

{¶32} We further note that multiple persons may have joint constructive possession of an object. *Philpott*, 2020-Ohio-5267, at ¶ 67; *Wolery*, 46 Ohio St.2d at 332, 329, 348 N.E.2d 351 ("[p]ossession * * * may be individual or joint" and "control or dominion may be achieved through the instrumentality of another"). Assuming arguendo that the Sig Sauer belonged to Bozeman and that she merely handed it to Perry to hide under the seat, it would be enough to sustain the convictions. *Philpott*, 2020-Ohio-5267, ¶ 50 ("the state need not prove ownership when establishing constructive possession"). *Burney* is also factually distinguishable in that, when asked about weapons, Perry responded equivocally which is a circumstance that has been found to be indicative of knowing possession. *State v. Marr*, 2d Dist. Montgomery No. 28604, 2020-Ohio-3898, ¶ 15 ("these equivocal answers supported a reasonable inference that Marr knew the contraband was inside the vehicle").

{¶33} Having established that sufficient evidence existed to support Perry's convictions, we now consider whether those convictions are against the weight of the evidence. Reviewing the record before this court, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that his convictions must be reversed. It was unquestionably established that the Sig Sauer was easily accessible to Perry as the driver of the vehicle. The presence of Perry's DNA on the weapon and his behavior during the stop indicate his awareness of the weapon. Although other circumstances existed, such as the vehicle belonging to another with some experience with handguns and the weapon not being visible to Perry, it was for the jury to resolve inconsistencies and conflicts in the evidence. The jury's determination that the evidence was in favor of Perry's guilt was not contrary to the weight of the evidence, even if there

11

was also evidence that could have supported a finding of innocence.

{¶34} The assignments of error are without merit.

{¶35} For the foregoing reasons, Perry's convictions for Having Weapons While Under Disability and Improperly Handling Firearms in a Motor Vehicle are affirmed. Costs to be taxed against the appellant.

MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2021-L-005